## Martin *against* Schoenberger.

8ws367
169　451

8ws367
171　49
8 WS 367
29 SC 2566

Defendant guaranteed to plaintiff $3000 commissions for transporting goods west for defendant, plaintiff covenanting to forward no goods for any other person or line for any place west of Hollidaysburg. Plaintiff cannot recover on the guaranty, if he forwarded goods by other lines as far as Hollidaysburg, if their ultimate destination was for places west of Hollidaysburg.

A person cannot recover for part performance of an entire contract, where he has failed in the performance on his part.

THE opinion of this Court, which states the facts of this case, was delivered by

BURNSIDE, J.—The parties in this case, on the 13th March 1839, entered into a written agreement, by which the plaintiff was to receive goods at his depôt on Willow street corner of Front, and forward them per the Reliance Transportation Company during the coming season at certain prices; the goods received at his depôt and shipped on board of boats at Schuylkill, for groceries and goods paying a lower rate of freight $1 per 2000 lbs., for dry-goods and all goods paying a higher rate of freight $2, and to receive goods coming from the west from the boats on the Schuylkill and deliver them at his depôt on the Delaware or ship them on board a vessel at his wharf for 50 cents per 2000 lbs., unless the rates of freight from Philadelphia to Pittsburgh should be reduced to a lower price than $1 per 100 lbs. for groceries and $1.25 per 100 lbs. on merchandise, when a new arrangement was to be entered into. Also for goods sent by the Reliance Transportation Company from their warehouse in Market street (to be shipped from Schuylkill) if accompanied by the list of the goods and weights attached, for those destined for any place west of Hollidaysburg 75 cents per 2000 lbs., and for those destined for Hollidaysburg or any place intermediate 50 cents per 2000 lbs. Martin was to receipt for goods and furnish copies to transmit by mail to the agent of the Reliance Transportation Company at Pittsburgh; to keep a record of all goods shipped, with rates of freight annexed, in such way as the Reliance Transportation Company may direct.

[Martin v. Schoenberger.]

The plaintiff was to direct the loading and starting of all boats loaded, and to prefer, in loading, the boats selected by the Reliance Transportation Company, unless where goods were on hand over 24 hours and no such boat in port, when he might engage any other boat in port. Martin engaged to forward no goods for any other person or line for any place west of Hollidaysburg, but he reserved the right of landing and delivering to owners or consignees any goods arriving from New York, Baltimore or elsewhere. The plaintiff was to render an account of advances and commissions monthly; and the Reliance Transportation Company guaranteed to Martin business to the amount of $3000 for commissions, and to furnish the necessary books, blanks, stationery, &c., to pay freight on goods going west to the boatman at Hollidaysburg, and on goods coming east at Philadelphia. The Reliance Transportation Company to pay the account of Jacob Martin when presented monthly and found correct.

The action was brought for the guaranty, the commissions only amounting to about $600, which had been paid; and the plaintiff declared in case, setting out the agreement, and averring, as he was bound to do, that he had faithfully kept and performed his part of the agreement. On the trial it clearly appeared from the plaintiff's books and by witnesses that the plaintiff shipped goods by other conveyances than the Reliance Line, and that he forwarded goods to many persons and places west of Hollidaysburg. The Judge of the District Court instructed the jury that if the plaintiff during the season forwarded goods by other lines as far as Hollidaysburg, if the ultimate destination of the goods was for places west of Hollidaysburg, the plaintiff could not recover on the guaranty. If the suit had been for the commissions, or if he was claiming for his services actually performed, his case might be different. But as this suit was urged on the ground of the guaranty, the plaintiff could not recover if he violated his agreement in forwarding goods contrary to its terms. This is the principal error complained of, the plaintiff's counsel contending the case should have been submitted to the jury, as in *Steigleman* v. *Jeffries*, (1 *Serg. & Rawle* 477), as a question of defalcation.

On the other hand it was contended he was bound to aver and prove performance, and if he failed in that, he could not recover; and so has the law ever been held in Pennsylvania. Questions of this kind are of frequent occurrence and of great practical importance. To permit a man to recover for part performance of an entire contract, or to permit him to recover on his agreement where he has failed to perform, would tend to demoralize the whole country. If the law were so, a man would just perform as much of his contract as would suit his convenience or cupidity; all faith and fair dealing would be at an end, and all confidence between man and man would be destroyed. The law is settled in *Harris* v. *Ligget*, (1 *Watts & Serg.* 201), that he who has per-

[Martin v. Schoenberger.]

formed a special agreement to do a particular thing may recover the stipulated price of it by an action of *indebitatus assumpsit,* and use the agreement as evidence of the amount of compensation due. But if there be but part performance by the plaintiff of his part of the contract, he cannot recover. So in *Shaw* v. *Turnpike Company,* (2 *P. R.* 254; 3 *Ibid.* 445), where a contract is entire, before any recovery can be had of the consideration money, the plaintiff must prove that he has performed or is ready to perform his part of the contract, or that the performance was prevented by the defendant. The Judge properly held to the written contract, and he instructed the jury, as he ought to have done, that if they found the plaintiff had violated 'his engagements, he could not recover. No plaintiff ought ever to be permitted to recover for part performance of his engagements, unless prevented by the defendant from performing, or so trifled with, that it becomes his duty to declare the contract at an end.

There is but one other question worth noticing. The plaintiff objected to the defendant's evidence and the examination of his own books, because he had not received notice of the matter. The defendant's defence was not defalcation. The court below were the best judges of their own rules. The plaintiff was bound to make out his case; and we incline to the opinion the evidence was admissible under the general issue, and cannot reverse on that ground after a full trial on the merits.

Judgment affirmed.